# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 1:20-sw-325
4230 UNIVERSITY DRIVE )
FAIRFAX, VIRGINIA 23227 ) Under Seal
)

*FILED MAR 11 2020*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

4230 UNIVERSITY DRIVE, FAIRFAX, VIRGINIA 23227, as described in Attachment A.

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Selling Firearms without a License |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

AUSA John Blanchard/AUSA Morris Parker    Gordon Cummings, Special Agent, HSI
Printed name and title

Sworn to before me and signed in my presence.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

Date: March 11, 2020    _____
Judge's signature

City and state: Alexandria, Virginia    Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

### Property to be Searched

The premises to be searched is 4230 University Drive, Fairfax, Virginia 22030 (the "TARGET RESIDENCE"). The TARGET RESIDENCE is a **yellow house** with **red shutters**, with a **white door** at the entrance. The numbers **"4230"** are visible above the white door. A **black mail box** bearing the numbers "4230" is attached to the house to left of the white door. There is a **deck on the right side of the house.**

12

## ATTACHMENT B

### Particular Things to be Seized

a. The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of: dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(a), and possessing and transferring a machinegun, in violation of 18 U.S.C. § 922(o) (the "Target Offenses"), as described in the search warrant affidavit, including, but not limited to:

   a. firearms;

   b. firearm parts;

   c. ammunition;

   d. boxes or packaging used to ship, receive, hold or otherwise transport firearms;

   e. firearm accessories;

   f. machinery or equipment used to manufacture firearms;

   g. receipts, bills, invoices, statements, drafts, money orders, checks, ATF forms, or any other items relating to the possession, sale, or purchase of firearms or parts used to make firearms;

   h. photographs depicting firearms;

   i. notebooks or ledgers relating to firearms;

   j. records of storage facilities owned or rented;

   k. mobile phones (including smart phones);

   l. 3D printer;

   m. documents or files related to 3D printing;

   n. Computers and tablet devices;

   o. items indicating occupancy, residency, rental, or ownership of 4230 University Drive, Fairfax, Virginia 22030, including utility and telephone bills, cancelled envelopes, rental, purchase, or lease agreements, and keys; and

13

p. locked or closed containers, including safes, and their contents, which could include any of the above-listed evidence.

b. Any and all information and records on any mobile phones (including smart phones), computers, tablets, personal digital assistants, and any other electronic storage medium or device whose seizure is otherwise authorized by this warrant that may be, or may contain, evidence of violations of the Target Offenses, involving Davud Sungur, including, but not limited to, the following:

    a. communications or information reflecting the possession, manufacture, sale, or purchase of firearms;

    b. communications with criminal associates about firearms or criminal activity;

    c. photographs or videos of firearms;

    d. photographs or videos of co-conspirators;

    e. records of use of mapping applications for directions to a place where a firearm was possessed, sold, or purchased;

    f. call logs;

    g. address/phone books or contact information that reflect the names of co-conspirators; and

    h. records of storage facilities owned or rented.

c. For any mobile phones (including smart phones), computers, tablets, personal digital assistants, and any other electronic storage medium or device whose seizure is otherwise authorized by this warrant and contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "DEVICE"), the following:

    i. evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    j. records evidencing the use of Internet Protocol addresses;

14

      k.      records of Internet activity, including firewall logs, caches, browser history and cookies, bookmarked or favorited websites, search terms that the user entered into any Internet search engine, and user-typed web addresses; and

      l.      GPS information or other location data on the DEVICE.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. Such records and information include the content of communications, text messages, voice mail messages, photographs, images, and videos.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>4230 UNIVERSITY DRIVE, FAIRFAX, VIRGINIA 23227 | 1:20-sw-325<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A SEARCH WARRANT**

I, Gordon Cummings, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search 4230 University Drive, Fairfax, Virginia 22030 (hereinafter, the "TARGET RESIDENCE"), further described in Attachment A.

2. I am a Special Agent of the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the investigative component of Immigration and Customs Enforcement ("ICE"), empowered under the statutory authority of 19 U.S.C. §1589(a) and 8 U.S.C. § 1357. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7), that is, an officer of the United States who is empowered to conduct investigations and to make arrests.

3. I have been a Special Agent with HSI since 2010. Prior to joining HSI, I was a Special Agent with the General Services Administration Office of the Inspector General from 2000 through 2010. Since 2000, I have received training and gained experience in fundamental areas of law enforcement, including but not limited to interview techniques, the preparation and execution of search warrants, search and seizure procedures, and arrest procedures. Throughout

my career as a federal law enforcement officer, I have received training in and investigated cases involving firearms violations, narcotics, money laundering, white collar crime, and other criminal activities. In the course of conducting criminal investigations, I have interviewed confidential informants and cooperating witnesses, conducted both physical and electronic surveillance, supported undercover operations, analyzed financial records, and analyzed phone and internet records. I have participated in and executed numerous search and arrest warrants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. As described in greater detail below, a joint investigation has revealed that Davud SUNGUR ("SUNGUR") has been dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), and has transferred a machinegun, in violation of 18 U.S.C. § 922(o) (collectively, the "TARGET OFFENSES"). Moreover, there is probable cause to search the TARGET RESIDENCE for evidence, fruits, contraband, and / or instrumentalities of the TARGET OFFENSES, as set forth more fully in Attachment B.

## FACTUAL BASIS SUPPORTING PROBABLE CAUSE

6. HSI, the Fairfax County Police Department ("FCPD"), and the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") are investigating SUNGUR, a 19 year-old male residing in the Eastern District of Virginia, regarding possible violations of 18 U.S.C. §§ 922(a)(1)(A) (dealing in firearms without a license) and 922(o) (possession or transfer of a machinegun), among other crimes.

### A. First Firearms Purchase

7. On or about January 2, 2020, detectives with the FCPD's Organized Crime & Intelligence Bureau who frequently operate in an undercover capacity ("UD 1" and "UD 2") received information from a confidential source ("CS") that SUNGUR was selling firearms. That same day, the CS provided SUNGUR with UD 1's telephone number, telling SUNGUR the number belonged to a prospective firearms buyer. Later that evening, SUNGUR texted UD 1 from an AT&T Mobility cell phone number[1] with a 202 area code, introducing himself and stating that he had been informed that UD 1 was looking for "some stuff." After UD 1 replied, "Yeah," the following conversation took place:

> SUNGUR: He told me that he showed you what I have. Do you need any more information on it? They are 100% clean never used with no writings on it. Brand new made.
>
> UD 1: Call me no BS

8. Shortly thereafter, SUNGUR called UD 1 using that same number. SUNGUR told UD 1 that he had made two pistols the previous week, and that he could sell both firearms for a total of $1,600. SUNGUR told UD 1 that the pistols would come with 100 rounds of ammunition, two extended magazines, and two 15-round magazines.

9. On or about January 3, 2020, SUNGUR met UD 1 at a prearranged location in Fairfax County, Virginia, within the Eastern District of Virginia, to conduct the transaction. At

---

[1] Records provided by AT&T Mobility in compliance with a search warrant (case no. 1:20-sw-132, under seal) authorized by the Honorable John F. Anderson, United States Magistrate Judge for the Eastern District of Virginia, on February 13, 2020, revealed that SUNGUR's father is the subscriber of this number and that the billing address for the account is the TARGET RESIDENCE. AT&T Mobility also provided historical cell site data for the telephone assigned that call number. There were approximately 7,390 call records returned from the warrant, 3,065 of which hit off-of the two towers closest to the TARGET RESIDENCE.

approximately 11:00 A.M., SUNGUR arrived at the location in a gray Honda Civic[2] sporting a bike rack on the rear of the vehicle.

10. SUNGUR approached UD 1's vehicle and made contact with UD 1 and UD 2. The detectives recorded audio of the encounter. SUNGUR and the two detectives stood outside of UD 1's vehicle. SUNGUR wished to show UD 1 and UD 2 the quality of the pistols he had made, and proceeded to don blue latex gloves. SUNGUR then disassembled two Glock-style, polymer-frame 9mm pistols to show the detectives that they were in good condition. SUNGUR pointed out that there were no serial numbers on either pistol and explained that such pistols are legal to own but not to sell. SUNGUR told UD 1 and UD 2 that he is trying to get "bigger" in the business and planned to obtain a federal firearms license when he turned 21.

11. UD 2 asked SUNGUR if he did anything else, to which SUNGUR replied, "I mean, I'm trying to get into building AR's and AK's, but I haven't gotten there yet. I'm just doing Glocks right now. I mean, I can get you guys AR's and AK's, but they would have numbers on them." SUNGUR also mentioned that he had a 3D printer and could provide a component capable of rendering a firearm fully automatic.

12. Prior to leaving the location, SUNGUR sold the two 9mm pistols, two 30-round 9mm magazines, two 15-round 9mm magazines, 100 rounds of "Tulammo" 9mm ammunition, and 100 rounds of "Wolf" 9mm ammunition to the detectives in exchange for $1,600 in FCPD buy funds.

13. After completing the transaction, I used a law enforcement database to query the number of the license plate of the Honda Civic in which SUNGUR had arrived. That query showed that the Civic is registered to an individual who was later identified as SUNGUR's father at the

---

[2] This vehicle has been observed at a residence in Vienna on multiple occasions by law enforcement. However, a different subject has been observed getting into the vehicle at that residence and driving it away.

4

TARGET RESIDENCE. A Virginia Department of Motor Vehicles database query also revealed that the TARGET RESIDENCE is listed as SUNGUR's current address.

### B. Second Firearm Purchase

14. On or about the morning of January 7, 2020, SUNGUR texted UD 1, and the following conversation took place:

SUNGUR: "How u doing? Would you be interested in the AR?"

UD 1: "Yes. U have to give me a good price."

SUNGUR: "2000 comes with 5 mags and ammo. It's an upgraded firearm in almost brand new conditions i put about 50 rounds through it. 100% clean."

UD 1: "Call me"

15. SUNGUR proceeded to call UD 1 and advised that he was in possession of an AR-15 with an upgraded trigger that a friend had installed. SUNGUR added that the AR-15 would come with multiple magazines and ammunition, some of which would consist of armor-piercing rounds. SUNGUR stated that for no extra charge, he could give UD 1 a piece for the AR-15 that would render the rifle fully automatic. SUNGUR explained to UD 1 that he was waiting for the part to arrive but would show UD 1 how to install it. UD 1 expressed his interest in all of the foregoing to SUNGUR and discussed meeting soon to conduct the transaction.

16. SUNGUR and UD 1 continued to communicate via text message and ultimately agreed to meet at the same prearranged location on January 22, 2020 to conduct the transaction.

17. On January 22, 2020, FCPD detectives conducted surveillance at the TARGET RESIDENCE and observed SUNGUR exit the TARGET RESIDENCE carrying a black box. The detectives observed SUNGUR enter a silver Toyota Rav-4 and drive away. A law enforcement

5

database query of the vehicle's license plate number revealed that the Rav-4 is registered to SUNGUR's father at the TARGET RESIDENCE.

18. SUNGUR proceeded to meet UD 1 and UD 2 at the same prearranged location in Fairfax County. The detectives recorded audio of the encounter. Upon SUNGUR's arrival, UD 1 and UD 2 exited their vehicle and met with SUNGUR at the rear of the vehicle in which he had arrived. SUNGUR provided UD 1 with what appeared to be the same black box that SUNGAR had been observed carrying out of the TARGET RESIDENCE. SUNGAR then accompanied UD 1 to UD 1's vehicle. Once inside the vehicle, UD 1 opened the box, which contained an AR-15 rifle.

19. SUNGUR again donned gloves and began explaining what he had done to make the rifle fully automatic. SUNGUR showed the detectives a small, plastic object that he called a "bottle opener," which he claimed had been created by a friend on a 3D printer and which he said would render the AR-15 fully automatic when placed inside the rifle. SUNGUR proceeded to place the object inside the rifle to show UD 1 how to make the firearm fully automatic.

20. SUNGUR subsequently sold UD 1 and UD 2 the AR-15 rifle bearing serial number 134355, four empty magazines, .223 caliber ammunition, and the "bottle opener" in exchange for $2,000 in FCPD buy funds.

21. Prior to leaving the location, SUNGUR told UD 1 and UD 2 that he had ordered additional lower receivers to make more pistols, and showed them a MAC-11 firearm he had stored under the driver's seat of his vehicle. When UD 1 and UD 2 expressed interest in the MAC-11, SUNGUR advised he was working on rendering it capable of firing fully automatically.

22. On or about the early evening of January 23, 2020, SUNGUR and UD 1 had a conversation via text message in which they discussed the potential sale and purchase of the MAC-11. In so doing, they discussed the price of the firearm:

SUNGUR: "These are regular firearm dealer prices."

UD 1: "Ok u paid 2. What u gonna charge me?"

SUNGUR: "I was thinking 6 would be a fair price, considering its 10k on the other market and on the regular market its priced at 7-8k."

UD 1: "We can talk later make sure I get first show to get it, work on that price."

SUNGUR: "Alright."

### C. February 1, 2020 Walmart Encounter

23. On or about February 1, 2020, a FCPD patrol officer responded to the Walmart located in the 11000 block of Lee Highway in Fairfax, Virginia, for a call about a suspicious person with what looked like a firearm in the parking lot. Upon arrival, the officer encountered SUNGUR sitting inside the back seat of the same Toyota Rav-4 he had driven to the January 22, 2020 deal with UD 1 and UD 2.

24. SUNGUR explained to the officer that he was working on a lower receiver for a firearm, and showed the officer the piece on which he was currently working. The officer noted that the receiver lacked various components critical to a firearm's operation. SUNGUR explained that he was planning on building a firearm to completion, and showed the officer how he was drilling a hole in the stripped-down receiver. When asked why he was working on his firearm in the Walmart parking lot, SUNGUR advised that he was waiting for a friend who was supposed to be meeting him there. SUNGUR then complained to the officer, questioning why someone would call the police on him when he was simply exercising his constitutional rights.

25. When the officer later called the reporting party to discuss his encounter with SUNGUR, the reporting party informed him that he had found a note on his car after exiting the Walmart that read: "Nice. Calling the cops on someone simply building a Glock lower in his vehicle. I'm protecting my 2A rights. Please don't try to infringe people's rights. Only tyrants infringe rights. SIC SEMPER TYRANNIS. Free men don't ask permission. If you are interested in buying a gun (legally) call me at [the same AT&T Mobility number used to communicate with the detectives]."

### D. Third Firearm Purchase

26. On or about February 10, 2020, SUNGUR texted UD 2 a photograph of what appeared to be a Glock-style, polymer-frame pistol with an extended magazine.

27. On or about February 11, 2020, SUNGUR called UD 2. UD 2 told SUNGUR that he wished to purchase the pistol and extended magazine pictured in the February 10, 2020 text, and asked SUNGUR if he had anything else for sale. SUNGUR responded that he did not have anything else for sale but could sell UD 2 the pistol with an extended magazine, a regular magazine, and ammunition for $800. SUNGUR explained to UD 2 that he usually sells Glocks for $900 and that he has sent such firearms to customers in California as well as to local customers who were otherwise unable to obtain firearms. SUNGUR told UD 2 he was going to keep his MAC-11 because it was "too hot," and told UD 2 that he also had a "Draco." Based on my training and experience, I know that a "Draco" is an AK-47-style pistol.

28. When UD 2 asked SUNGUR if he had any more "bottle openers," SUNGUR responded that he would sell UD 2 the last one he had for $50. SUNGUR explained to UD 2 that the true name of the component was actually a "drop-in auto sear," but that he called it a "bottle

opener." SUNGUR and UD 2 agreed to meet at the same location in Fairfax County where they had met on January 3 and 22.

29. On or about February 19, 2020, SUNGUR met UD 2 at the same prearranged location in Fairfax County. SUNGUR arrived in the aforementioned Rav-4, exited that vehicle, and entered UD 2's vehicle. The detectives recorded audio of the encounter. SUNGUR then handed UD 2 a brown cardboard box containing a Glock-style, polymer-frame 9mm handgun devoid of any serial number, along with ammunition and a drop-in auto sear. SUNGUR told UD 2 that he had forgotten the extended magazine. Thereafter, he returned to his vehicle momentarily before re-entering UD 2's vehicle with a standard 9mm magazine that he said UD 2 could have free of charge.

30. During their ensuing conversation, SUNGUR admitted that he made the pistol. SUNGUR explained to UD 2 how he orders firearm lower receivers and then outfits them with other firearm parts to create fully functioning handguns. SUNGUR stated that he had obtained a kit that aids him in making the handguns, and noted that a benefit of making one's own handgun is that it will not contain a serial number. SUNGUR acknowledged that it is illegal to sell a gun without a serial number. When UD 2 asked what he should tell the police should he be caught with a handgun devoid of a serial number, SUNGUR instructed UD 2 to tell the police that UD 2 had made it himself.

31. During the meeting, SUNGUR told UD 2 that he had made the drop-in auto sear on a 3D printer that he had purchased for $300, adding that he was in possession of the "files" needed to make such a product. SUNGUR told UD 2 that one cannot purchase a drop-in auto sear online and, when asked if a drop-in auto sear was illegal to possess, responded "yeah, pretty much."

SUNGUR told UD 2 that if a police officer looked at the drop-in auto sear, the officer would not know what it was, but that if an ATF agent looked at it, the agent would know what it was.

32. SUNGUR explained to UD 2 how the drop-in auto sear makes a gun fully automatic. SUNGUR showed UD 2 how to fit the drop-in auto sear into the pistol, and told him that he would need to sand the auto sear in order to ensure it would fit properly.

33. SUNGUR told UD 2 that he usually sells firearms as soon as he obtains them, and that the only guns he presently owned were the MAC-11 and the Draco. With regard to the Draco, which he claimed was a Serbian import, SUNGUR said he was thinking about converting it into a fully automatic firearm. SUNGUR told UD 2 he had previously sold guns to customers in California via the mail, stating that he could get a higher profit for doing so. He also stated that he had mailed 15 rounds of ammunition hidden in a sunglasses case to a friend in Canada.

34. SUNGUR told UD 2 that he would be getting four Glock handguns in the next few weeks, and asked UD 2 if they could work together to send the guns to Turkey, stating that he has a good connection in Turkey he can trust.

35. SUNGUR also told UD 2 that he has a "file" on his 3D computer to create a silencer, but that he had not produced one yet.

36. At the conclusion of the conversation, SUNGUR sold UD 2 a 9mm pistol, a 9mm magazine, a box of 9mm ammunition, and a drop-in auto sear in exchange for $800 in FCPD buy funds.

37. The above-referenced pistols are "firearms" as defined in 18 U.S.C. § 921(a)(3). SUNGUR is not a federally licensed dealer of firearms within the meaning of 18 U.S.C. § 921.

### E. November 2019 Firearm Recovery

38. The Homicide Division of the FCPD's Criminal Investigations Bureau has recently informed members of the law enforcement team investigating SUNGUR that an AK-47 rifle was recovered during the November 28, 2019 execution of a search warrant. After tracing that rifle's serial number, detectives spoke to the rifle's original purchaser, who advised that he had recently sold the rifle to a thin young man who drove a Toyota Rav-4. The original purchaser provided detectives with that young man's phone number, which matches the AT&T Mobility number that SUNGUR has used to communicate with UD 1 and UD 2 and that was written on the note left on the February 1, 2020 Walmart reporting party's windshield.

Respectfully submitted,

Gordon Cummings
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this \_\_\_\_ day of March, 2020.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to be Searched**

The premises to be searched is 4230 University Drive, Fairfax, Virginia 22030 (the "TARGET RESIDENCE"). The TARGET RESIDENCE is a **yellow house** with **red shutters**, with a **white door** at the entrance. The numbers **"4230"** are visible above the white door. A **black mail box** bearing the numbers "4230" is attached to the house to left of the white door. There is a **deck on the right side of the house.**

## ATTACHMENT B

### Particular Things to be Seized

a. The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of: dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(a), and possessing and transferring a machinegun, in violation of 18 U.S.C. § 922(o) (the "Target Offenses"), as described in the search warrant affidavit, including, but not limited to:

   a. firearms;

   b. firearm parts;

   c. ammunition;

   d. boxes or packaging used to ship, receive, hold or otherwise transport firearms;

   e. firearm accessories;

   f. machinery or equipment used to manufacture firearms;

   g. receipts, bills, invoices, statements, drafts, money orders, checks, ATF forms, or any other items relating to the possession, sale, or purchase of firearms or parts used to make firearms;

   h. photographs depicting firearms;

   i. notebooks or ledgers relating to firearms;

   j. records of storage facilities owned or rented;

   k. mobile phones (including smart phones);

   l. 3D printer;

   m. documents or files related to 3D printing;

   n. Computers and tablet devices;

   o. items indicating occupancy, residency, rental, or ownership of 4230 University Drive, Fairfax, Virginia 22030, including utility and telephone bills, cancelled envelopes, rental, purchase, or lease agreements, and keys; and

13

    p. locked or closed containers, including safes, and their contents, which could include any of the above-listed evidence.

b. Any and all information and records on any mobile phones (including smart phones), computers, tablets, personal digital assistants, and any other electronic storage medium or device whose seizure is otherwise authorized by this warrant that may be, or may contain, evidence of violations of the Target Offenses, involving Davud Sungur, including, but not limited to, the following:

    a. communications or information reflecting the possession, manufacture, sale, or purchase of firearms;

    b. communications with criminal associates about firearms or criminal activity;

    c. photographs or videos of firearms;

    d. photographs or videos of co-conspirators;

    e. records of use of mapping applications for directions to a place where a firearm was possessed, sold, or purchased;

    f. call logs;

    g. address/phone books or contact information that reflect the names of co-conspirators; and

    h. records of storage facilities owned or rented.

c. For any mobile phones (including smart phones), computers, tablets, personal digital assistants, and any other electronic storage medium or device whose seizure is otherwise authorized by this warrant and contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "DEVICE"), the following:

    i. evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    j. records evidencing the use of Internet Protocol addresses;

      k.      records of Internet activity, including firewall logs, caches, browser history and cookies, bookmarked or favorited websites, search terms that the user entered into any Internet search engine, and user-typed web addresses; and

      l.      GPS information or other location data on the DEVICE.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. Such records and information include the content of communications, text messages, voice mail messages, photographs, images, and videos.